ORIGINAL

Approved: _____
SARAH MORTAZAVI
Assistant United States Attorney

19MAG1332

Before: HONORABLE SARAH NETBURN
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - - - - X
                                        :  **SEALED COMPLAINT**
UNITED STATES OF AMERICA                :
                                        :  Violations of
    - v. -                              :  18 U.S.C. §§ 666,
                                        :  1343, 1349 & 2
MICHAEL HOLLINGSWORTH,                  :
                                        :  COUNTY OF OFFENSE:
                                        :  NEW YORK
                   Defendant.           :
                                        :
- - - - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

KRISTA CORR, being duly sworn, deposes and says that she is a Senior Special Agent with the National Railroad Passenger Corporation's ("Amtrak's") Office of Inspector General, and charges as follows:

COUNT ONE
(Solicitation of Bribes and Gratuities)

1. In or about November 2017, in the Southern District of New York and elsewhere, MICHAEL HOLLINGSWORTH, the defendant, being an agent of an organization that received, in a one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, to wit, a subcontractor authorized to collect hair and urine samples for Amtrak job applicants for the purpose of undergoing drug testing, corruptly solicited and demanded for the benefit of a person, and accepted and agreed to accept, a thing of value from a person, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of such organization involving a thing of value of $5,000 and more, to wit, HOLLINGSWORTH, in his capacity as a drug test sample collector for Amtrak job applicants, solicited and accepted cash from an Amtrak job applicant, intending to be influenced and

rewarded to assist in falsifying the prospective employee's drug test results so that the applicant would be hired by Amtrak.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

## COUNT TWO
### (Wire Fraud)

2. From at least in or about November 2017 through in or about December 2017, in the Southern District of New York and elsewhere, MICHAEL HOLLINGSWORTH, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, in furtherance of a scheme to falsify the results of a drug test for an Amtrak job applicant, HOLLINGSWORTH caused a data file to be sent interstate containing the results of a pre-employment drug test that HOLLINGSWORTH had agreed to falsify by submitting the hair sample of a person other than the job applicant.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE
### (Conspiracy to Commit Wire Fraud)

3. From at least in or about November 2017, up to and including at least in or about December 2017, in the Southern District of New York and elsewhere, MICHAEL HOLLINGSWORTH, the defendant, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

4.   It was a part and object of the conspiracy that MICHAEL HOLLINGSWORTH, the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

5.   I am a Senior Special Agent with Amtrak's Office of Inspector General.  I have been personally involved in the investigation of this matter, and I base this affidavit on that experience, on my conversations with other law enforcement officials and other witnesses, and on my examination of various reports and records.  Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts I have learned during the course of my investigation.  Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

6.   Based on my review of Amtrak contracts and my discussions with Amtrak human resources representatives and other lay witnesses, I have learned the following:

a.   In or about 2011, Amtrak entered into a contract (the "2011 Contract") with a drug testing company (the "Contractor"), wherein the Contractor would function as a drug test sample collector on Amtrak's behalf for, among others, Amtrak job applicants.  The 2011 Contract has been renewed, updated, and amended between in or about 2011 through in or about January 2018.  From my review of the 2011 Contract and the updates, amendments, and renewals operative as of in or about November 2017, I have learned that the Contractor was authorized to hire a subcontractor to collect samples from Amtrak job applicants for the purpose of submitting those samples to a national laboratory for drug testing.

b. Based on my discussions with representatives from Amtrak human resources and the Contractor, I have learned that at least in or about July 2016, the Contractor subcontracted with MICHAEL HOLLINGSWORTH, the defendant, for the purpose of having a company that HOLLINGSWORTH owned and operated, "Drugs Don't Work" ("DDW"), collect samples for drug testing.

7. Based on my conversations with an Amtrak job applicant ("Witness-1") and my review of Witness-1's emails, Amtrak human resources records, and other documents, I have learned, among other things, the following:

a. In or around October 2017, Witness-1 applied for a job as a baggage handler at Amtrak. Following, among other things, an in-person interview, Witness-1 was given a conditional offer of employment with Amtrak as a baggage handler on or around November 14, 2017. The employment offer was contingent upon Witness-1's completion of, among other things, a drug test that required submission of Witness-1's hair sample.

b. On or around November 14, 2017, Witness-1 received an email from a representative of the Contractor providing Witness-1 with the address and contact information for MICHAEL HOLLINGSWORTH, the defendant, and DDW, directing Witness-1 to contact HOLLINGSWORTH in order to set up an appointment for HOLLINGSWORTH to collect a sample of Witness-1's hair to submit to a national laboratory for drug testing in connection with Amtrak's conditional offer of employment.

c. From my conversations with Witness-1, I have learned that Witness-1 contacted HOLLINGSWORTH and scheduled an appointment for Witness-1's hair sample collection on or about November 21, 2017.

d. Witness-1 met with MICHAEL HOLLINGSWORTH, the defendant, at a location in Manhattan, New York. At that meeting, HOLLINGSWORTH collected a hair sample from Witness-1. From my conversations with Witness-1, I have learned that during this meeting, HOLLINGSWORTH asked Witness-1, in substance and in part, whether Witness-1 had used drugs. I have learned that Witness-1 indicated, in substance and in part, that Witness-1 had used marijuana several months ago but believed there would be no trace of drugs in Witness-1's hair sample. HOLLINGSWORTH responded, in substance and in part, that residue from marijuana remains in a user's hair for a number of months, and expressed to Witness-1 that Witness-1's hair sample would test positive

for narcotics. HOLLINGSWORTH then stated, in substance and in part, that he would discard the hair sample Witness-1 had provided, and that Witness-1 could return the following day with a "clean" hair sample, namely, a hair sample that would not test positive for drugs. HOLLINGSWORTH asked Witness-1, in substance and in part, for payment in exchange for HOLLINGSWORTH agreeing to submit the "clean" hair sample to the laboratory in place of Witness-1's hair sample. Witness-1 agreed to return the following day with a "clean" hair sample.

    e. Following his meeting with HOLLINGSWORTH, Witness-1 contacted his girlfriend ("Witness-2") regarding his meeting. Witness-2 offered to bring her minor daughter ("Minor-1") to HOLLINGSWORTH's office the following day for the purpose of having HOLLINGSWORTH collect a "clean" hair sample from Minor-1 and submit it in place of Witness-1's hair sample.

    f. On or about November 22, 2017, Witness-1, Witness-2, and Minor-1 met with HOLLINGSWORTH at a location in Manhattan, New York. HOLLINGSWORTH collected a hair sample from Minor-1 and filled out the chain of custody form associated with that sample indicating that the sample had been collected from Witness-1. Witness-1 paid HOLLINGSWORTH between $200 and $300 cash. HOLLINGSWORTH indicated at the meeting that he would send Minor-1's hair sample to a national drug testing laboratory ("Lab-1") for testing.

    8. From my discussions with representatives of Lab-1, my discussions with Amtrak human resources personnel, and my review of a chain of custody form associated with a hair sample submitted to Lab-1 for testing by MICHAEL HOLLINGSWORTH, the defendant, I have learned the following:

    a. MICHAEL HOLLINGSWORTH, the defendant, submitted hair sample from Minor-1 to Lab-1 for drug testing. The chain of custody form associated with the hair sample listed Witness-1 as the hair donor and "Michael Hollingsworth" as the collector. The collection date was listed as November 22, 2017.

    b. Lab-1 is located in Lenexa, Kansas.

    c. In or about November 2017, Lab-1 forwarded the lab test results from the hair sample MICHAEL HOLLINGSWORTH, the defendant, submitted, electronically in a data file from Lab-1's location in Lenexa, Kansas, to a Medical Review Officer (the "MRO") located in Pennsylvania. The MRO analyzed the results and issued a testing report indicating that the hair

sample associated with Witness-1 and collected by "Michael Hollingsworth" had tested positive for cocaine.

    d. On or about December 1, 2017, Witness-1, located in Manhattan, New York, received a phone call from the MRO, located in Pennsylvania, stating that the hair sample HOLLINGSWORTH had submitted on behalf of Witness-1 had tested positive for a narcotic substance.

    e. Thereafter, Amtrak rescinded Witness-1's conditional job offer due to his positive drug test results.

    f. On or about December 2, 2017, Witness-1 recorded a conversation between himself and MICHAEL HOLLINGSWORTH, the defendant. I have reviewed a copy of that audio recording, in which HOLLINGSWORTH stated, in substance and in part, the following:

      i. "I mean, we don't know why this happened. You saw how I packaged it. You know what it is. I can't, I can't explain this to you. I can't explain this to you at all. I have no clue."

      ii. "We know what we did."

      iii. "[I] can't explain this in a court of law."

      iv. "Let's…test the baby again… I'll pay for it… Let's test the baby and see if there is any, any type of opiate in the baby's system. Because this don't make sense. . . . [I won't] even . . . put it in as a baby . . . We're gonna in as you again."

    9. From my discussions with representatives of Amtrak and from my review of legislative documents, I have learned that Amtrak received over $10,000 in federal funds pursuant to the Continuing Appropriations Act, 2018 and Supplemental Appropriations for Disaster Relief Requirements Act, 2017, Pub. L. No. 115-56, between on or about October 1, 2017 through on or about December 8, 2017.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of MICHAEL HOLLINGSWORTH, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

_____
KRISTA CORR

Sworn to before me this
____ day of February, 2019

_____
HONORABLE SARAH NETBURN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK